UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GN Netcom, Inc., | ) |
| Plaintiff, | ) |
| v. | ) Case No. _____ |
| Online King LLC d/b/a Amazon Reseller Online King, | ) **JURY TRIAL DEMANDED** |
| Defendant. | ) |

## COMPLAINT FOR PERMANENT INJUNCTION AND DAMAGES

Plaintiff GN Netcom, Inc. ("GN" or "Plaintiff") as and for its Complaint against Defendant Online King LLC d/b/a Amazon Reseller Online King ("Online King" or "Defendant"), alleges upon personal knowledge as to its own acts and as to events taking place in its presence, and upon information and belief as to all other facts, as follows:

### NATURE OF THIS ACTION

1. This is an action for trademark infringement arising under the Lanham Act, 15 U.S.C. § 1051, et seq., as well as related state law claims, arising from Defendant's improper sale of GN's products and use of trademarks owned and used by GN. Defendant's conduct has produced and, unless enjoined by this Court, will continue to produce a likelihood of consumer confusion and deception, to the irreparable injury of GN.

2. As a result of Defendant's actions, GN is suffering a loss of the enormous goodwill that GN has created in its trademarks and is losing profits from lost sales of products. This action seeks permanent injunctive relief and damages for Defendant's infringement of GN's intellectual property rights.

1

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this Complaint pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a) and (b), as these claims arise under the Trademark Laws of the United States.

4. This Court has supplemental jurisdiction over the pendant state law claims pursuant to 28 U.S.C. § 1367(a).

5. Defendant is subject to personal jurisdiction in the Commonwealth of Massachusetts and this District pursuant to Mass. Gen. Laws ch. 223A §3 because (a) Defendant has sold numerous products into the Commonwealth and this District; (b) Defendant has caused tortious injury to GN's trademarks within the Commonwealth and this District; (c) Defendant practices the unlawful conduct complained of herein, in part, within the Commonwealth and this District; (d) Defendant regularly conducts or solicits business within the Commonwealth and this District; (e) Defendant regularly and systematically directs electronic activity into the Commonwealth and this District with the manifest intent of engaging in business within the Commonwealth and this District, including the sale and/or offer for sale to Internet users within the Commonwealth and this District; and (f) Defendant enters into contracts with residents of the Commonwealth and this District through the sale of items on various online retail platforms and in Internet auctions.

6. Venue is proper in the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this claim occurred in this District.

## PARTIES

7. Plaintiff GN Netcom, Inc. is a Delaware corporation with its principal place of business at 900 Chelmsford Street, Tower II, 8th Floor, Lowell, MA 01851. GN is a headset

manufacturer, and its headsets are marketed and sold in the United States under the "Jabra," "VXi," and "GN Netcom" brands. GN is a subsidiary of GN Netcom A/S, which is a subsidiary of GN Store Nord A/S, both Danish corporations.

8. Upon information and belief, Defendant Online King LLC d/b/a Amazon Reseller Online King is a New York limited liability company with its principal place of business at 1683 53 Street, Suite 5-B, Brooklyn, NY 11204. Online King is a reseller of discounted electronic products and accessories. Online King resells a variety of electronic equipment and other products through several online retail platforms including, but not limited to, Amazon.com. Online King is an unauthorized reseller of GN products.

## FACTS

**A. GN's Trademark Usage**

9. On June 20, 1995, the U.S. Patent and Trademark Office ("PTO") issued registration number 1,900,419 for use of the JABRA mark on "communications equipment" (hereinafter, the "JABRA Mark"). GN is the sole and exclusive owner of the federally registered JABRA Mark on the PTO's Principal Register. The JABRA Mark has been in continuous use since at least 1995. A true and correct copy of a printout from the Trademark Electronic Search System ("TESS") evidencing this registration is attached hereto as Exhibit 1. Said registration is in full force and effect, and the JABRA Mark is incontestable pursuant to 15 U.S.C. § 1065.

10. GN owns several other federal trademark and service mark registrations, many of which utilize the JABRA Mark. Said registrations are in full force and effect, and most of these marks are incontestable pursuant to 15 U.S.C. § 1065.

11. On April 27, 2017, GN filed an application to register the VXI mark on "headsets, headphones, earphones" (hereinafter, the "VXI Mark"). A true and correct copy of a printout from TESS evidencing this registration application is attached hereto as Exhibit 2.

12. GN's trademarks, including the JABRA Mark and VXI Mark, are collectively referred to as the "GN Marks."

| Mark | Reg. Date | Reg. No. | Goods/Services |
| --- | --- | --- | --- |
| JABRA | June 20, 1995 | 1,900,419 | Communications equipment, namely ear pieces, transmitters, receivers and speakers. |

| Mark | Filing Date | Serial No. | Goods/Services |
| --- | --- | --- | --- |
| VXI | April 27, 2017 | 87,428,808 | Headsets, headphones, earphones and ear buds; speakers; microphones; telephones; telephone adaptors; telephone cables; battery chargers; speakerphones; wire and wireless communication apparatus; communication interface units and software; busy light indicators for use with wire and wireless communication apparatus; software; noise measurement apparatus; noise level indicators; apparatus for recording, transmission and reproduction of sound. |

13. GN advertises, distributes, and sells its products to consumers under the GN Marks.

14. GN has also acquired common law rights in the use of the GN Marks throughout the United States.

15. GN's federal trademark registrations were duly and legally issued, are valid and subsisting, and constitute *prima facie* evidence of GN's exclusive ownership of the GN Marks.

16. GN has invested many millions of dollars and has expended significant time and effort in advertising, promoting, and developing the GN Marks throughout the United States and the world. As a result of such advertising and promotion, GN has established substantial goodwill and widespread recognition in its GN Marks, and those marks have become associated exclusively with GN and its products by both customers and potential customers, as well as the general public at large.

17. To create and maintain such goodwill among its customers, GN has taken substantial steps to ensure that products bearing its GN Marks are of the highest quality. As a result, the GN Marks have become widely known and are recognized throughout the United States and the world as symbols of high quality products.

18. One of the most significant steps taken in this regard is GN's development of a network of authorized dealers in the United States ("Authorized GN Dealers" or "Authorized Dealer Network").

19. GN requires that its Authorized GN Dealers execute an agreement (the "Authorized Dealer Agreement"), which prohibits the transshipment, diversion, or transfer of any GN products to any other retail party or reseller.

20. Only products designed and manufactured for the United States and purchased from an Authorized GN Dealer qualify for GN's extensive United States manufacturer's warranty (the "GN Manufacturer's Warranty") and are supported by the customer service of its Authorized Dealer Network.

21. GN products designed and manufactured for different geographic regions of the world are covered by different warranties.

**B. Defendant's Infringing and Improper Conduct**

22. Defendant has sold and is currently selling GN products on several online retail platforms, including, but not limited to, Amazon.com, under the seller name "Online King." Defendant sells a variety of audio products including headphones and speaker equipment.

23. Defendant offers for sale and sells GN products using the GN Marks.

24. GN has never authorized or otherwise granted Defendant permission to use the GN Marks in the sale of its products or otherwise.

25. To obtain the inventory of GN products Defendant has offered for sale on online retail platforms, Defendant intentionally sought out, directly or indirectly, and obtained, GN products from international resellers.

26. Further, based on knowledge in the industry and through demand letter communications sent by GN, Defendant was aware that products designed and manufactured for the Asian market contain material differences than the same products designed and manufactured for the United States market.

27. Despite being warned via letters and email communications, Defendant has imported and continues to import products bearing the GN Marks intended for the Asian market ("Asian Market Products") from Asia into the United States.

28. After importing the Asian Market Products, Defendant distributes and sells the Asian Market Products as genuine GN products to United States consumers through online retail platforms.

29. The Asian Market Products are not intended for distribution and resale in the United States.

30. Language differences in the user interface and on the product, as well as on the packaging and warranty information cards, create material differences between the Asian Market Products and genuine GN products properly distributed and sold in the United States.

31. UPC coding differences create material differences between the Asian Market Products and genuine GN products properly distributed and sold in the United States as consumers will not be able to register their products or obtain warranty services for products containing UPC codes intended for another geographic market.

32. GN products designed and manufactured for the Asian market have different warranties than GN products designed and manufactured for the United States.

33. Battery and voltage certification differences create material differences between the Asian Market Products and genuine GN products properly distributed and sold in the United States. Battery and voltage certification in the United States requires a higher standard of certification and, therefore, higher quality batteries are used for GN products designed for the United States as opposed to Asia.

34. Product packaging differences create material differences between the Asian Market Products and genuine GN products properly distributed and sold in the United States.

35. The Asian Market Products have been illegally imported from Asia into the United States by Defendant and then distributed and sold to consumers in the United States, including, but not limited to, consumers within this District.

36. Asian Market Products are materially different from genuine GN products properly distributed and sold in the United States for each of the reasons stated above.

37. Defendant's sale of illegally imported, Asian Market Products to United States consumers results in actual and irreparable harm to GN and to the consuming public.

38. Further, only United States products purchased from an Authorized GN Dealer qualify for the GN Manufacturer's Warranty. The GN Manufacturer's Warranty does not extend to GN products purchased from unauthorized dealers, such as Defendant.

39. GN has never authorized or otherwise granted Defendant permission to sell its products. Defendant is not an Authorized GN Dealer.

40. Defendant lists GN products in original United States retail packaging, but consumers receive Asian Market Products sometimes not even in retail packaging.

41. Defendant lists GN products as new and in original United States retail packaging, misleading consumers into believing that its products are protected by the GN Manufacturer's Warranty.

42. Because Defendant is not an Authorized GN Dealer and cannot sell GN products protected by the GN Manufacturer's Warranty, the products bearing the GN Marks offered and sold by Defendant are materially different than those sold by GN. The GN products sold by Defendant do not have a manufacturer's warranty.

43. Defendant's continued advertisement, display, and sale of GN products bearing the GN Marks has harmed, and continues to harm GN and its relationships with its Authorized GN Dealers.



**C. The Likelihood of Confusion and Injury Caused by Defendant's Actions**

44. Defendant's actions substantially harm GN by placing illegally imported, materially different Asian Market Products into the stream of commerce in the United States.

45. Defendant's actions substantially harm GN and its consumers who ultimately purchase the Defendant's illegally imported, materially different Asian Market Products believing them to be genuine products intended for the United States market.

46. Defendant's actions substantially harm GN and its consumers by providing consumers with products that were designed and manufactured to be used in a different region of the world and may have not been certified under applicable safety standards.

47. Defendant's conduct results in consumer confusion as well as the dilution of GN's goodwill and trade name as consumers are not receiving the products they believe they are purchasing.

9

48. Defendant's sale of GN products bearing the GN Marks with no warranty is likely to cause confusion among consumers regarding GN's sponsorship or approval of those products.

49. Defendant's actions substantially harm consumers who purchase Defendant's products believing they are protected by the GN's Manufacturer's Warranty. Defendant's actions cause consumers to not receive a warranted product as they intended.

50. The sale of GN products by unauthorized resellers interferes with GN's ability to control the quality of products bearing the GN Marks.

51. As a result of Defendant's actions, GN is suffering the loss of the enormous goodwill it created in the GN Marks.

52. Defendant is likely to continue to commit the acts complained of herein, and unless restrained and enjoined, will continue to do so, all to GN's irreparable harm.

## COUNT I
### (Trademark Infringement in Violation of 15 U.S.C. § 1114)

53. GN hereby realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

54. This is a claim for federal trademark infringement under 15 U.S.C. § 1114.

55. The acts of Defendant alleged herein constitute the use in commerce, without the consent of GN, of a reproduction, counterfeit, copy, or colorable imitation of the GN Marks in connection with the sale, offering for sale, distribution, or advertising of goods, which use is likely to cause confusion or mistake, or to deceive consumers, and therefore infringe GN's rights in the GN Marks, all in violation of the Lanham Act.

56. Defendant has used, and continues to use, the GN Marks in the sale of GN products that are intended for the Asian market and/or do not qualify for GN's Manufacturer's

Warranty. Therefore, the products sold by Defendant are materially different from those offered or sold by GN.

57. Defendant's infringing activities are likely to cause, are actually causing, and are willful and intended to cause, confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of such products, and constitute trademark infringement under 15 U.S.C. § 1114.

58. Defendant's use of the GN Marks in the advertisement or sale of materially different products demonstrates an intentional, willful, and malicious intent to trade on the goodwill associated with the GN Marks, thereby causing immediate, substantial, and irreparable injury to GN.

59. As a direct and proximate result of Defendant's actions, GN has been, and continues to be, damaged by Defendant's activities and conduct. Defendant has profited thereby, and, unless its conduct is enjoined, GN's reputation and goodwill will continue to suffer irreparable injury that cannot adequately be calculated or compensated by money damages. Accordingly, GN is entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

## COUNT II
**(Unfair Competition and False Designation of Origin in Violation of 15 U.S.C. § 1125(a))**

60. GN hereby realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

61. This is a claim for federal trademark infringement under 15 U.S.C. § 1125(a).

62. GN engages in interstate activities designed to promote its goods and services sold, as well as the goodwill associated with the GN Marks, throughout the United States.

63. The GN Marks have been, and will continue to be, known throughout the United States as identifying and distinguishing GN's products and services.

64. By selling or distributing products using the GN Marks that are materially different from those sold by GN as alleged herein, Defendant is engaging in unfair competition, falsely designating the origin of its goods and services, and/or falsely representing sponsorship by, affiliation with, or connection to GN and its goods and services in violation of 15 U.S.C. § 1125(a).

65. By advertising or promoting products using the GN Marks that are materially different from those sold by GN as alleged herein, Defendant is misrepresenting the nature, characteristics, qualities, or geographic origin of its goods and services in violation of 15 U.S.C. § 1125(a).

66. Defendant's continued use of the GN Marks constitutes the use in interstate commerce of a word, term, name, symbol, or device, or any combination thereof, or false designation of origin, in connection with the sale, or offering for sale, of goods in violation of 15 U.S.C. § 1125(a)(1)(A).

67. Defendant has used, and continues to use, the GN Marks to sell products that are materially different from those sold by GN in the United States, thereby creating a false designation of origin in violation of 15 U.S.C. § 1125(a), and Defendant's activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and public deception in the marketplace, and injury to GN's goodwill and reputation as symbolized by the GN Marks, for which GN has no adequate remedy at law.

68. Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the GN Marks, thereby causing immediate, substantial, and irreparable injury to GN.

69. By selling and advertising products under the GN Marks that are materially different from those sold by GN in the United States, Defendant is using the GN Marks in connection with the sale, offering for sale, distribution, and/or advertising of goods and services to the public, without GN's consent. Defendant is falsely designating the origin of its goods and services and/or falsely representing sponsorship by, affiliation with, or connection to, GN and its goods and services in violation of 15 U.S.C. 1125(a). Accordingly, GN is entitled to a judgment of three times its damages and Defendant's ill-gotten profits, together with reasonable attorneys' fees, pursuant to 15 U.S.C. § 1117(a).

70. As a direct and proximate result of Defendant's actions, GN has been, and continues to be, damaged by Defendant's activities and conduct. Defendant has profited thereby, and unless its conduct is enjoined, GN's reputation and goodwill will continue to suffer irreparable injury that cannot adequately be calculated or compensated by money damages. Accordingly, GN is entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

## COUNT III
**(Unfair Competition in Violation of M.G.L. c. 93A)**

71. GN hereby realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

72. GN and Defendant are in the conduct of trade or commerce within the meaning of M.G.L. c. 93A.

73. As detailed above, Defendant's continued interference and unauthorized sale of GN products constitutes an unfair and deceptive business practice.

74. Defendant's acts have irreparably harmed GN and, unless enjoined, will continue to do so in a manner affording GN no adequate remedy at law.

75. Defendant has refused to desist from these wrongful acts, and therefore Defendant has indicated that it intends to continue its unlawful conduct, unless restrained by this Court.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court:

1. Issue a preliminary injunction and permanent injunction preventing Defendant from using the GN Mark and requiring Defendant to discontinue its infringing practices;

2. Award GN its damages suffered as a result of Defendant's acts and treble said damages as provided by law pursuant to 15 U.S.C. § 1117 and M.G.L. c. 93A;

3. Award GN its reasonable attorneys' fees in bringing this action as allowed by law;

4. Award GN pre-judgment and post-judgment interest in the maximum amount allowed under the law;

5. Award GN the costs incurred in bringing this action; and

6. Grant GN such other relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

GN hereby requests a trial by jury on all causes of action so triable.

                                            Respectfully submitted,

                                            Plaintiff,
                                            GN NETCOM, INC.,
                                            by its attorneys,

                                            */s/ Michael R. Murphy*
                                            Michael R. Murphy (BBO # 671816)
                                            michael.r.murphy@klgates.com
                                            Jack S. Brodsky (BBO # 669683)
                                            jack.brodsky@klgates.com
                                            K&L Gates LLP
                                            State Street Financial Center
                                            One Lincoln Street
                                            Boston, MA 02111
                                            (617) 261-3100
                                            (617) 261-3175

Dated: October 26, 2017